IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATTY C. WILSON, *individually* | : | CIV. No. 4:14-CV-00771 |
| *and as administrator of the Estate of* | : | |
| *Jerry Wilson, deceased,* | : | (Judge Brann) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MOORE FREIGHTSERVICE, INC., | : | |
| *et al.,* | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
March 25, 2015

This case concerns the unfortunate death of a man due to heart failure at the scene of a fire. Before the court is Plaintiff Patty C. Wilson's Motion for Reconsideration (ECF No. 116) of this Court's Order (ECF No. 113) granting Defendants TA Operating LLC and Treston W. Harris' Motion for Summary Judgment (ECF No. 96). The Court retains jurisdiction pursuant to 28 U.S.C. § 1332. Venue was transferred to this Court pursuant to 28 U.S.C. § 1404 and § 1406.

The matter has been briefed by the Parties, the Court held oral argument, and the matter is ripe for disposition. Because it is not "undeniably clear" that Wilson's harm was unforeseeable when defined at a general level of abstraction as

1

"physical injury including death," and, therefore, the scope of the Defendants' duty did encompass Wilson's harm, the Plaintiff's motion for reconsideration is granted.

## I.   BACKGROUND

The material facts for the purposes of this motion are not in dispute, and are as follows.  On October 17, 2011, Defendant Moore Freight services contracted with Jerry Wilson ("Wilson"), husband of Plaintiff Patty C. Wilson, to haul glass using a Moore Freight trailer.  Shortly after 3:00 p.m. that day, Wilson, traveling along Interstate 80 in Pennsylvania, perceived a problem with the left front trailer brake after a trailer tire blew.  See Pl.'s Ans. Statement Facts ¶ 4, Jun. 25, 2014, ECF No. 100 [hereinafter Pl.'s SOF].  After glancing in the rear view mirror, Wilson saw smoke emanating from a fire on the left front part of the trailer near the break.  Wilson stopped the vehicle, exited, and utilized the vehicle's fire extinguisher to douse the fire emerging from the brake.

He brought the truck to a repair garage approximately two miles from the scene of the incident: the Defendant TA Operating LLC, in Lamar, Clinton County, Pennsylvania.  Wilson arrived at the garage at 3:42 p.m., and gave the truck to the mechanics for repair.  Pl.'s SOF, ¶ 4.  While waiting, Wilson purchased a fire extinguisher to replace the empty one he used on the fire.  Several employees of

Defendant TA Operating, including Defendant Treston W. Harris, completed the repairs and represented that the trailer was safe to use.  Wilson paid for the repairs at 5:51 p.m.  Id.  Based on the Defendants'[1] representations that the vehicle was safe, Wilson got back into the trailer and pulled the vehicle back onto Interstate 80 to continue his journey.

After driving a short distance, the left front trailer brake caught fire again. According to the police report, Wilson exited the vehicle and attempted to put out the fire with the new fire extinguisher.  When this failed to quench the flames, he returned to the vehicle, secured a gallon of water, and again attempted to extinguish the fire.  As Wilson tried to douse the fire, he perished from a heart affliction that the Plaintiff avers was ventricular dysrhythmia.  Wilson died at 6:53 p.m.  See id.

In the wake of this devastating event, Wilson's estate filed an action against the Defendants.  The Defendants moved for summary judgment, alleging that, while Wilson's death was tragic, the Defendants had no duty to prevent this unforeseeable harm.  The Court, after considering the briefs of the Parties, granted the Defendants' Motion for Summary Judgment.  The Court found that Wilson's

---

[1] In using the term "Defendants" throughout the opinion, the Court refers collectively to those Defendants that are the subject of this opinion: Defendant TA Operating LLC and Defendant Treston W. Harris.

3

death by heart malfunction was an unforeseeable result of the Defendants' alleged

failure to repair the truck, such that the particular harm was beyond the scope of

Defendants' duty.

Plaintiff's counsel filed the instant Motion for Reconsideration alleging that

the Court made an error of law because it is not "undeniably clear" that the

Defendants did not owe a duty to Wilson, and that newly discovered evidence

supports a claim of negligent infliction of emotional distress claim.

## II.   DISCUSSION

### A.   Motion for Reconsideration Standard

"The purpose of a motion for reconsideration is to correct manifest errors of

law or fact or to present newly discovered evidence." Harsco v. Zlotnicki, 779

F.2d 906, 909 (3d Cir. 1985).  A court should grant a motion for reconsideration if

the party seeking reconsideration shows: "(1) an intervening change in the

controlling law; (2) the availability of new evidence that was not available when

the court granted the motion for summary judgment; or (3) the need to correct a

clear error of law or fact or to prevent manifest injustice." Max's Seafood Café ex

rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

"The standard for granting a motion for reconsideration is a stringent one . . .

. [A] mere disagreement with the court does not translate into a clear error of law."

4

Mpala v. Smith, CIV. 3:CV-06-841, 2007 WL 136750, *2 (M.D. Pa. Jan. 16, 2007) (Kosik, J.) aff'd, 241 F. App'x 3 (3d Cir. 2007).  "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly."  Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Nevertheless, this Motion for Reconsideration provided the Court with the opportunity to ruminate more deeply on these issues and, with the benefit of its own thorough research, refine its thinking to a more precise conclusion and correct its prior misapprehension.  Despite the handicap of one-sided advocacy, the Court spent a considerable amount of time and effort endeavoring to achieve the right result.  While the Court undoubtedly has interests in efficiency and finality, our highest duty is to justice.  Precise articulation of the law and its proper application to cases are vital components of our system, and that is what the Court endeavors to provide in this case.

Moreover, the Parties indicated at oral argument that they will most likely pursue an interlocutory appeal of these difficult legal issues.  The Court concurs that the issues are worthy of consideration, and certifies the accompanying Order as such.  Therefore, the Court aims to provide a thorough discussion of the issues to ease the burden of the appellate court in an effort to achieve the just result.

B.     Defendants Owed a Duty to Wilson

To state a claim for negligence in Pennsylvania, a plaintiff must establish:

(1) a duty owed by a defendant; (2) a defendant's breach of that duty; (3) actual

damages; and, (4) a causal connection between the breach and those damages.[2]

See, e.g., R.W. v. Manzek, 888 A.2d 740, 746 (Pa. 2005).  "The primary element in

any negligence cause of action is that the defendant owes a duty of care to the

plaintiff."  Althaus ex rel. Althus v. Cohen, 756 A.2d 1166, 1169 (Pa. 2000).

There can be no negligence claim when there is no duty of care established, even if

_____

[2] It is this Court's duty to apply the substantive law of Pennsylvania to this issue.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78–80 (1938).  As the United States Court of Appeals for the Third Circuit wrote:

> [When there is] no reported decision by the Pennsylvania Supreme court or any other Pennsylvania court addressing the precise issue before it, it [is] the duty of the District Court to predict how the Pennsylvania Supreme Court would interpret [the relevant issue] if presented with this case.  See, e.g., Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir. 1981).  In so doing, a federal court can also give due regard, but not conclusive effect, to the decisional law of lower state courts.  See, e.g., Burke v. Maasen, 904 F.2d 178, 182 (3d Cir. 1990).  The opinions of intermediate appellate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."  West v. AT &T Co., 311 U.S. 223, 237 (1940).

Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

6

a defendant's actions were careless, reckless, or inadvertent.  Zanine v. Gallagher,

497 A.2d 1332, 1334 (Pa. Super. Ct. 1985).  Furthermore, "[t]he existence of a

duty is a question of law for the court to decide."  Manzek, 888 A.2d at 746.

When undertaking the duty inquiry, courts must discern both whether the

defendant owed the plaintiff a legal duty, and what the scope and parameters of

that duty are.  See, e.g., RESTATEMENT (SECOND) OF THE LAW – TORTS § 328B

(1965).  "The determination of whether a duty exists in a particular case involves

the weighing of several discrete factors which include: (1) the relationship between

the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk

imposed and foreseeability of the harm incurred; (4) the consequences of imposing

a duty upon the actor; and (5) the overall public interest in the proposed solution."

Althaus, 756 A.2d at 1169.  The first and the third elements of that inquiry are

most pertinent in this analysis: the relationship between the parties and the

foreseeability of the harm.

In this case, it is undeniable that the commercial relationship between the

Parties establishes that the Defendants owed a duty of care to Wilson.  The scope

of that duty, however, is less clear.  Defining the scope of that duty was the focus

of the Court's original opinion, and is the crucial element at this juncture.

Discerning the scope of that duty implicates the concept of foreseeability,

because the duty only extends to those harms that are reasonably foreseeable.

Roche v. Ugly Duckling Car Sales, Inc., 879 A.2d 785, 790 (Pa. Super. Ct. 2005).

In this case, the issue is whether Wilson's harm was a foreseeable injury from one

in the Defendants' position.

Foreseeability is an oft-maligned inquiry in the negligence analysis.  As one

professor noted, "the concept of foreseeability is a scourge, and its role in

negligence cases is a vexing, crisscrossed morass."  W. Jonathan Cardi, *Purging*

*Foreseeability: The New Vision of Duty and Judicial Power in the Proposed*

*Restatement (Third) of Torts*, 58 VAND. L. REV. 739, 740 (2005).  Indeed, other

scholars state that foreseeability may as well be called "strawberry shortcake,"

because it is such a "malleable standard" that has been muddled and misconstrued

to the extent that it has lost any force as a discernable legal test.[3]  Patricia K.

Fitzsimmons & Bridget Genteman Hoy, *Visualizing Foreseeability*, 45 ST. LOUIS

U. L.J. 907, 908, 2011 (2001).  Here, the Court hopes to articulate clearly the

proper application of foreseeability under Pennsylvania law for the questions

---

[3] For a juxtaposition of two applications of foreseeability that demonstrates its rather comical malleability, *compare* Baltimore City Passenger Ry. Co. v. Kemp, 61 M.D. 74, 82–83 (1884) (finding unforesseable that a speeding driver would hit another car, that the collision would bruise the shin of its driver, and that the bruise would later become cancerous), *with* Hines v. Morrow, 236 S.W. 183, 187–88 (Tex. Civ. App. 1921) (finding foreseeable, as a matter of law, that a pothole left by defendant in a highway would stall a car, that a good-Samaritan attempting to pull it out would get his wooden leg stuck in the mud, and that a loop in the tow rope would lasso his good leg and break it).  Cardi, 58 VAND. L. REV. at 749 n.44.

before it, because "even the most consumptive among us tires eventually of strawberry shortcake."  Cardi, 58 VAND. L. REV. at 809.

The Court addresses two issues concerning foreseeability that pertain to this case.  First, under Pennsylvania law, should courts continue to conduct a foreseeability inquiry under the "duty" prong of a negligence analysis, or should it be purged from duty and confined to the breach or causation analyses, as the RESTATEMENT (THIRD) OF TORTS, some courts, and some scholars suggest?  Second, when examining the foreseeability of the harm plaintiff suffered at the duty stage of the negligence analysis, should courts state that harm at a general level of abstraction, or consider the particular facts of that case?  This case hinges on these issues, and the Court addresses them in turn.

      1.    <u>Foreseeability as Component of the Duty Analysis</u>

          a.    *Foreseeability Remains Part of Duty Analysis in Pennsylvania*

Traditionally, foreseeability is a subcomponent of both the duty and causation analyses in a negligence claim under Pennsylvania law.  In the duty inquiry, "[t]he scope of an individual's duty of care extends to those risks that are reasonably foreseeable under the circumstances."  <u>Allen v. Fletcher</u>,  No. CIV-A 3:07-0722, 2009 WL 1542767, at *3 (M.D. Pa. June 2, 2009) (Caputo, J.) (citing <u>Roche v. Ugly Duckling Car Sales, Inc.</u>, 879 A.2d 785, 790 (Pa. Super. Ct. 2005)).

Pennsylvania courts have routinely held that a defendant may only be held liable for the harm that a person in his position could have reasonably foreseen.  See, e.g., Roche, 879 A.2d at 790; McPeake v. William T. Cannon, Esquire, P.C., 553 A.2d 439, 442–43 (Pa. Super. Ct. 1988); Zanine, 497 A.2d at 1334–35 (Pa. Super. Ct. 1985); Maffei v. Palina, 16 Pa. D. & C.4th 228, 233–34 (Phila. Ct. Comm. Pl. 1993); Farley v. Sley Sys. Garages, 13 Pa. D. & C.2d 680, 688–89 ( Ct. Comm. Pl., Phila. Cnty. 1958).

The weight of these cases, however, predate the American Law Institute's (ALI) publication of the RESTATEMENT (THIRD) OF TORTS, which eliminates "foreseeability" language in its formulation of duty.  The RESTATEMENT (THIRD)'s formulation of duty reads in pertinent part:

> (a) An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm.

RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 7 (2010).  The type of physical harm need not be foreseeable under this language.

The comments further elaborate on the absence of foreseeability language in this formulation of duty:

> A lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination. Rather, it is a determination that no reasonable person could find that the defendant has breached the duty of reasonable care.

. . .

**Despite the widespread use of foreseeability in no-duty determinations, this Restatement disapproves that practice** and limits no-duty rulings to articulated policy or principle in order to facilitate more transparent explanations of the reasons for a no-duty ruling and to protect the traditional function of the jury as factfinder." RESTATEMENT (THIRD) § 7 cmt. j (emphasis added).[4]

---

[4] The full text of the comment reads:

*j. The proper role for foreseeability.* Foreseeable risk is an element in the determination of negligence. In order to determine whether appropriate care was exercised, the factfinder must assess the foreseeable risk at the time of the defendant's alleged negligence. The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. Thus, for reasons explained in Comment *i*, courts should leave such determinations to juries unless no reasonable person could differ on the matter.

A no-duty ruling represents a determination, a purely legal question, that no liability should be imposed on actors in a category of cases. Such a ruling should be explained and justified based on articulated policies or principles that justify exempting these actors from liability or modifying the ordinary duty of reasonable care. These reasons of policy and principle do not depend on the foreseeability of harm based on the specific facts of a case. They should be articulated directly without obscuring references to foreseeability.

Courts do appropriately rule that the defendant has not breached a duty of reasonable care when reasonable minds cannot differ on that question. See Comment *i*. These determinations are based on the specific facts of the case, are applicable only to that case, and are appropriately cognizant of the role of the jury in factual determinations. A lack of foreseeable risk in a specific case may be a basis for a no-breach determination, but such a ruling is not a no-duty determination. Rather, it is a determination that no reasonable person could find that the defendant has breached the duty of reasonable care.

Despite widespread use of foreseeability in no-duty determinations, this Restatement disapproves that practice and limits no-duty rulings to articulated policy or principle in order to facilitate more transparent explanations of the reasons for a no-duty ruling and to protect the traditional function of the jury as factfinder.

11

Several states have either adopted the ALI's new formulation of the duty analysis that eliminates considerations of foreseeability, or have eliminated foreseeability as a component in that analysis with similar reasoning.  See, e.g., Hoyt v. Gutterz Bowl & Lounge L.L.C., 829 N.W.2d 772, 774–78, 783, 784 (Iowa 2013 ) (emphasizing that an assessment of the foreseeability of the risk was no longer part of a court's analysis in determining whether a duty was owed as a matter of law in accordance with the RESTATEMENT (THIRD), but instead was allocated to a fact finder as part of its determination of whether a duty had been breached); A.W. v. Lancaster Cnt. Sch. Dist. 0001, 784 N.W.2d 907, 914–18 (Neb. 2010) (holding that, pursuant to the principles articulated in the RESTATEMENT (THIRD), foreseeability should not be considered part of the duty analysis performed by the court, but to be considered by the finder of fact); Thompson v. Kaczinski, 774 N.W.2d 829, 835 (Iowa 2009) (explicitly finding the RESTATEMENT (THIRD)'s elimination of foreseeability in no-duty determinations to be "compelling" and adopting it); Gipson v. Kasey, 150 P.3d 228, 231 (Ariz. 2007) ("[W]e now expressly hold that foreseeability is not a factor to be considered by

_____

RESTATEMENT (THIRD)  § 7 cmt. j.

courts when making determinations of duty, and we reject any contrary suggestion in prior opinions."); see also Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 378–79 (Tenn. 2008) (Holder, J., concurring and dissenting) (criticizing the majority for retaining foreseeability in the determination of duty and arguing for adoption of the Restatement (Third)'s duty analysis).

The ALI's elimination of foreseeability as an element of the duty inquiry also sparked a heated debate among practitioners and scholars colorfully dubbed by some as "duty wars."  See Alani Golanski, *A New Look at Duty in Tort Law: Rehabilitating Foreseeability and Related Themes*, 75 ALB. L. REV. 227, 228 (2011–12) ("This article addresses the subtle yet turbulent 'duty wars' currently raging with respect to the conceptual nature of duty in tort law."); W. Jonathan Cardi & Michael D. Green, *Duty Wars*, 81 S. CAL. L. REV. 671 (2008).  Arguments abound on the legal, intellectual, and normative benefits and detriments of maintaining a foreseeability element in the duty analysis.  See, e.g., Golanski, 75 ALB. L. REV. at 228 (noting the article argues the vision of duty articulated in the new RESTATEMENT (THIRD) OF TORTS that purges foreseeability from duty is incoherent); Cardi, *Purging Foreseeability*, 58 VAND. L. REV. at 740 ("[J]udges' use of foreseeability as a means of deciding duty has a pernicious effect on the rule

of law.").[5]

While the debate swirls over the proper place of foreseeability in a

negligence analysis, the Supreme Court of Pennsylvania has not yet adopted the

RESTATEMENT (THIRD)'s formulation.  That court has, however, commented on

this issue and provided guidance to courts charged with the duty of applying

Pennsylvania law on this point.  An instructive footnote in an opinion on ancillary

issues addressed the point:

> Parenthetically, there is a prominent debate in the literature
> concerning whether foreseeability should continue to play a role in the
> judicial duty assessment or should be relegated entirely to the
> proximate cause inquiry ordinarily undertaken by jurors.  *Compare*
> RESTATEMENT (THIRD) OF TORTS: Liab. For Physical Harm § 7 cmt. J
> (Proposed Final Draft No. 1, 2005) (approval by American Law
> Institute Council and members in relevant part as indicated in Third
> Restatement § 40, Note (Proposed Final Draft No. 1 2007)), and
> Aaron D. Twerski, *The Cleaver, the Violin, and the Scalpel: Duty and
> the Restatement (Third) of Torts*, 60 HASTINGS L.J. 1, 22–23 (2008)
> (lending support for the Third Restatement's approach of excising
> foreseeability from judicial duty assessments, explaining
> "foreseeability is the exact type of factor that belongs in the domain of
> the jury, in making the decisions as to whether defendant's conduct
> was reasonable"), with David G. Owen, *Figuring Foreseeability*, 44
> Wake Forest L. Rev. 127 (2009) (offering a defense of the use of the
> concept of foreseeability in duty analysis).  **Foreseeability, of course,
> remains a factor in duty assessments undertaken by Pennsylvania
> courts unless and until the matter is raised, preserved, and**

---

[5] See also W. Jonathan Cardi, *The Hidden Legacy of Palsgraf: Modern Duty Law in
Microcosm*, 91 B.U. L. REV. 1873 (2011); W. Jonathan Cardi, *Reconstructing Foreseeability*, 46
B.C. L. REV. 921 (2005); John C.P. Goldberg & Benjamin C. Zipursky, *The Restatement (Third)
and The Place of Duty in Negligence Law*, 54 VAND. L. REV. 657 (2001)

**reconsidered on developed advocacy.**

Seebold v. Prison Health Servs., Inc., 57 A.3d 1232, 1249 n.26 (Pa. 2012)

(emphasis added).

While the Pennsylvania Supreme Court acknowledges the prominent debate

surrounding the RESTATEMENT (THIRD)'s elimination of foreseeability in the duty

analysis, it defers consideration of that debate and possible adoption of the new

RESTATEMENT until the issue is squarely before it and ripe for consideration.[6]

Accordingly, regardless of the merits or demerits of the RESTATEMENT (THIRD)'s

duty analysis, it is not any federal court's place to alter the law of Pennsylvania.

With the Pennsylvania Supreme Court's instruction in mind, this Court predicts

that, without a fully briefed consideration of all aspects of this question, the

Pennsylvania Supreme Court would continue to apply the existing law's

formulation of the duty analysis in which foreseeability remains a consideration.

With foreseeability unmistakably a component of the duty analysis, then, the

harm the plaintiff suffered must be reasonably foreseeable for the scope of the

defendant's duty to encompass that harm.  This, however, begs the question: with

what level of particularity should a court define the harm at the duty stage of the

---

[6] Relatedly, the Pennsylvania Supreme Court recently declined to adopt the
RESTATEMENT (THIRD) in a different area of tort law.  See Tincher v. Omega Flex, Inc., 104
A.3d 328 (Pa. 2014) (declining to adopt the RESTATEMENT (THIRD) in areas of strict liability tort
law).

negligence analysis?  What must be foreseeable?

>    b.    *Courts Define Harm in General Terms in Duty Analysis*

Although courts have struggled with the application of foreseeability, at the duty stage of the negligence analysis, courts should define the foreseeable harm at a general level of abstraction.  See <u>Kleinknecht v. Gettysburg College</u>, 989 F.2d 1360, 1369 (3d Cir. 1993).  Defining the foreseeable harm with particularity and incorporating case-specific facts is appropriately considered under the causation element of the negligence analysis and not under the duty inquiry.

In its original memorandum opinion in this case, this Court defined the harm in terms too particular for the duty analysis, and, in doing so, misapprehended the proper foreseeability inquiry at that stage in the negligence analysis.  <u>See</u> Ct. Mem. 9–11, Jan. 28, 2015, ECF No. 112.   Therefore, it was clear error to define the harm at the duty stage of the analysis in the particular terms as "death by heart malfunction," rather than as merely "physical injury including death."

While counsel for the Parties could not provide a satisfactory explanation on this issue in either their briefs or at oral argument, through its own efforts the Court discovered a case of the United States Court of Appeals for the Third Circuit that directly addresses this point, which is dispositive of the issue before the Court.  In <u>Kleinknecht v. Gettysburg College</u>, 989 F.2d 1360, 1369 (3d Cir. 1993), Judge

Hutchinson wrote for the majority:

> The type of foreseeability that determines a duty of care, as opposed to proximate cause, is not dependent on the foreseeability of a specific event. . . .  Instead, in the context of duty, the concept of foreseeability means the likelihood of the occurrence of a general type of risk rather than the likelihood of the occurrence of the precise chain of events leading to the injury. . . . Only when even the general likelihood of some broadly definable class of events, of which the particular event that caused the plaintiff's injury is a subclass, is unforeseeable can a court hold as a matter of law that the defendant did not have a duty to the plaintiff to guard against that broad general class of risks within which the particular harm the plaintiff suffered befell.

Kleinknecht, 989 F.2d at 1369 (internal quotations and citations omitted).

Applying this analysis to the case before the Court, the harm Wilson suffered is foreseeable when stated in general terms appropriate for the duty analysis.  The general harm Wilson suffered, physical injury up to and including death, is a foreseeable result from the failure to properly repair a vehicle.  The foreseeability of the particularized subset of that general harm, death by heart malfunction, is appropriately analyzed under the causation inquiry in this case.  Tellingly, despite defense counsel's competent and helpful advocacy, she was unable to muster a cohesive explanation at oral argument for denying that Wilson's harm falls within the scope of the Defendants' duty when articulated in general terms.

With this analysis as a guidepost, the cases advanced by the Defendants and

17

relied on by the Court in its original opinion are distinguishable.  For example, in

McPeake v. William T. Cannon, Esquire, P.C., 553 A.2d 439 (Pa. Super. Ct. 1988),

the Pennsylvania Superior Court held that a defendant owed no duty to a plaintiff

who killed himself shortly after he was criminally convicted, and whose estate

alleged that the suicide was a direct result of legal malpractice committed by the

defendant defense attorney.  This harm, physical injury including death, is not a

foreseeable harm from legal malpractice when stated in terms both general and

particular to that case.  As such, the harm was outside the scope of the defendant's

duty.

　　　In many of the other cases the Court considered, there was no relationship

between the parties, rendering it "undeniably clear" that the defendants had no duty

to the plaintiffs.[7]  In the case before the Court, however, the commercial

relationship between the parties combined with the foreseeability of the harm when

stated in general terms (as physical injury including death) remove this situation

from those "undeniably clear" cases.

---

[7] See, e.g., Roche v. Ugly Duckling Car Sales, Inc., 879 A.2d 785, 789–90 (Pa. Super Ct. 2005) (discussing the relationship between the parties as an important consideration in the duty analysis); Maffei v. Palina, 16 Pa. D. & C.4th 228, 231 (Ct Cmm. Plea, Phila. Cnty. 1993) ("The extent of the duty owed by a defendant to a plaintiff depends upon the relationship which then exists between the parties."); Zanine v. Gallagher, 497 A.2d 1332, 1334 (Pa. Super. Ct. 1985) ("'Duty, in any given situation, is predicated on the relationship existing between the parties at the relevant time.'") (quoting Morena v. South Hills Health Sys., 462 A.2d 680, 684 (Pa. 1983));

Rather, when examining the duty in general terms, the Defendants did have a duty to plaintiff that was predicated upon their commercial relationship.  See Althaus, 756 A.2d at 1169.  Once that duty is established, the Court must look to the foreseeability of the general harm to establish the scope of that duty, namely to prevent physical harm including death.  See Kleinknecht, 989 F.2d at 1369.  The foreseeability of the harm in its particular manifestation in this case, namely death by heart malfunction, is more properly considered under the causation element of this negligence claim.  See id.

Therefore, when stating the harm at the level of generality required under the duty analysis, it is not "undeniably clear" that the Defendants did not owe a duty to Wilson whose scope encompasses his harm.  Accordingly, the claim should survive the Defendants' Motion for Summary Judgment, and be examined under the breach and causation elements of the negligence analysis.

C.    Plaintiff Cannot State a Negligent Infliction of Emotional Distress Claim at this Juncture

The second ground of Plaintiff's Motion for Reconsideration rests on the argument that new evidence obtained in discovery that provides more specific information on the factual scenario Wilson endured and the injuries he suffered provides him with a viable claim of negligent infliction of emotional distress. Plaintiff may not state a claim of negligent infliction of emotional distress at this

19

juncture.  Because Plaintiff's attorney did not include such a claim in the

pleadings, that claim is now barred by the statute of limitations, and Plaintiff's

counsel has made no argument as to why the statute of limitations should not

apply.

Pennsylvania law recognizes a cause of action for negligent infliction of

emotional distress in three types of cases, namely when: 1) plaintiff suffers a

physical injury which causes the emotional distress; 2) plaintiff did not suffer a

personal impact but was in the zone of danger; or, 3) plaintiff witnesses an accident

causing serious injury to a close family member.  See, e.g., Hershman v.

Muhlenberg College, 17 F. Supp. 3d 454, 459 (E.D. Pa. 2014).

Plaintiff's claim for negligent infliction of emotional distress, therefore, is

barred by the statute of limitations for such claims in Pennsylvania, which is two

years.  See 42 Pa. C.S. § 5524; Jarvis v. Analytical Laboratory Servs. Inc., Civ. A.

No. 1:CV-12-0574, 2012 WL 1986442, *14 n.14 (M.D. Pa. Apr. 9, 2012).  The

incident in question took place on October 17, 2011.  Plaintiff's counsel's first

mention of a negligent infliction of emotional distress claim was in his brief in

support of his motion for reconsideration, filed February 9, 2015, well beyond the

two-year statute of limitations for this claim.  Absent a viable argument under the

relation back doctrine harbored in Federal Rule of Civil Procedure 15(c), which

Plaintiff's counsel does not make, this claim is barred by the statute of limitations.
See Jarvis, 2012 WL 1986442, *14 n.14.

To the extent that Plaintiff's counsel conflates a negligent infliction of
emotional distress claim with mental anguish damages resulting from bodily injury
in a negligence claim, mental anguish damages remain viable so long as the
negligence claim on which they are predicated remains viable.  See, e.g.,
Cunningham v. Forbes Regional Hosp., No. 1961 WDA 2013, 2014 WL 6682459,
*3–4 (Pa. Super. Ct. Nov. 21, 2014).

## III.    CONCLUSION

Because it is not undeniably clear that the scope of the Defendants' duty
does not encompass Wilson's harm when that harm is defined from a general level
of abstraction, the Plaintiff's motion for reconsideration is granted, the judgment
for Defendants is vacated, and the Defendants' Motion for Summary Judgment is
denied.

An appropriate Order follows.


BY THE COURT:


s/ Matthew W. Brann_____
Matthew W. Brann

21

United States District Judge